Richard A. Schonfeld, Nevada Bar No. 6815
rschonfeld@cslawoffice.net
CHESNOFF & SCHONFELD
520 South Fourth Street, 2nd Floor
Las Vegas, Nevada  89101
Telephone:   (702) 384-5563

John Burton, California Bar No. 86029[1]
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California  91103
Telephone:   (626) 449-8300

Attorneys for Plaintiff Stacey M. Richards

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STACEY M. RICHARDS,<br><br>        Plaintiff,<br><br>v.<br><br>GREG COX, RENEE BAKER, MICHAEL BYRNE, WILLIAM GITTERE, MICHAEL FLETCHER, ERIC BOARDMAN, and DOES 1 to 20. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Supplemental jurisdiction exists over Plaintiffs' pendent state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district because Defendants are subject to personal jurisdiction here, and because the claim arose in Ely State Prison, State of Nevada, which is within this district.

---

[1] Pro Hac Vice Application will be filed once a case number is assigned.

## PARTIES

4. Plaintiff Stacey M. Richards is an adult competent to bring suit in this Court. He is the same person who served a sentence with the Nevada Department of Corrections (NDOC) under the name "Rashaad Williams," NDOC Identification Number 1096266. Mr. Richards now resides in Los Angeles County, California, and uses the name with which he was born rather than the name he assumed as a young man. Mr. Richards is African American, and is, because of this incident, sightless.

5. Defendant Greg Cox is the former Director of the NDOC, and was director during the relevant time period. Pursuant to Nevada Revised Statute 209.131, Defendant Cox was personally responsible for enacting, promulgating and enforcing the policies and practices at issue, and for insuring constitutionally adequate training and supervision of NDOC employees, and was charged by law with the duty to protect the health and safety of NDOC inmates. Because of Eleventh-Amendment immunity Former Director Cox is sued in his personal capacity only.

6. Defendant Renee Baker is the Warden of Ely State Prison, and Defendants Mike Byrne, Michael Fletcher and William Gittere are Associate Wardens. At the time relevant to this lawsuit, these four Defendants were personally responsible for the day to day staffing and operations of Ely State Prison. They, too, are sued in their individual capacities only.

7. Defendant Eric Boardman is an NDOC correctional officer (CO).

8. Defendants DOES 1-20, Individual and/or Corporate, whose true identities are unknown to Plaintiff at this time, are believed to be responsible in some manner for the events and occurrences that are the subject of this Complaint. Plaintiff will seek leave to amend this Complaint to insert the true name(s) of these Defendants when the same has been ascertained, with appropriate allegations pertaining to their capacities and conduct.

9. Each Defendant acted under color of law of the State of Nevada, and in concert with each other defendant. Each ratified the acts of the other defendants and failed to intervene to prevent the violation of Plaintiff's constitutional rights.

## FACTUAL ALLEGATIONS

### A. The Policy, Practice and Custom At Issue

10. Starting in 1984, the NDOC began providing its corrections officers with Remington 870 12-gauge shotguns loaded with 7.5 birdshot, with directions that they may fire "skip rounds" at inmates in situation that do not warrant the use of deadly force. This practice and custom is inherently reckless, and frankly irrational and inhumane. There are occasions in the NDOC where a few inmates, while confined in an area with numerous other inmates, get into an altercation. The innocent, bystander inmates, to demonstrate their lack of involvement in the altercation, know to lie down. COs order all the inmates to lie down. Then the COs are instructed to fire birdshot into the floor or ground near non-compliant inmates, precisely where the compliant inmates heads, faces, and other vulnerable organs are exposed to injury. The birdshot, by its nature, can ricochet unpredictably and harm innocent inmates such as Plaintiff.

11. Greg Cox, as NDOC Director, implemented the NDOC Use of Force Policy, Administrative Regulation (AR) 405, effective January 2, 2012. It remained in effect through May 25, 2016. This regulation enshrined Nevada as the last state to permit its COs to discharge firearms with birdshot at inmates under circumstances where deadly force would not be constitutionally permitted, and under circumstances creating a substantial risk of death or great bodily injury, including blindness, to compliant, bystander inmates such as Plaintiff Richards.

12. AR 405.03 defines "non-deadly force" to include "12-gauge shotguns loaded with . . . 7.5 bird shot round designed to skip shoot the bird shot into the offender(s) and striking the offender(s) in their lower extremities to temporarily incapacitate or immobilize the offender(s)." The NDOC "Use of Force Method & Overview, Administrative Regulation 405" PowerPoint presentation defines a "less than lethal weapon" as "designed and manufactured with the intent that it not create a substantial risk of causing death or serious bodily injury when a person with appropriate training uses the weapon in accordance with the instructions of the

- 3 -

manufacturer." The NDOC PowerPoint states that "less than lethal weapons" include "non-deadly force equipment per AR 405.03," in other words the Remington shotgun with birdshot.

13. Defendants have chosen to operate the NDOC at very low staffing levels and therefore rely too much on the use of ordnance, including bird shot, to control inmates. Nevada has the highest prisoner to staffing ratio (12.28 prisoners for every one security staff person) of any state department of corrections in the country, nearly double the national average of 6.27 prisoners to one security staff member.

14. Under contemporary standards for correctional institutions, there are many less-injuring alternatives to bird shot, including PR-24 side-handle batons, chemical agents, solid, non-penetrating rounds, and electrical weapons such as the taser that should have been implemented long ago to replace bird shot.

15. The Defendants, other than Boardman, have been deliberately indifferent in the training of its COs in the use of ordnance to control prisoners. They did not warn or instruct the COs not to use skip shots in the vicinity of compliant inmates who are obeying instructions to prone out on the floor. Instead, they recklessly and with deliberate indifference trained and authorized COs to focus instead on the misbehaving inmates, and if they remain standing after an order to prone out, then fire a skip shot without taking into account the health and safety of compliant inmates who foreseeably would be nearby lying on the ground.

16. Defendants, other than Defendant Boardman, adopted Ely State Prison Operating Procedure (ESP OP) 405, which fails to categorize firearms with bird shot and limit their use to constitutionally permissible situations, those involving the threat of death or great bodily injury, and which allowed COs to "skip shoot" birdshot into areas where multiple inmates are compliant and proned out.

17. As a result of AR 405.03 and equipping the NDOC COs with 12-gauge bird shot rounds, there were 71 instances during calendar years 2012, 2013 and 2014 involving bird shot discharged at inmates. At least one inmate was killed. On various

occasions bystander inmates and staff members have been hit by pellets and injured.

18. Defendants, other than Defendant Boardman, thus, with deliberate indifference, created a policy, authorized a practice, and tolerated a custom that violated clearly established Eighth Amendment rights to protect inmates from cruel and unusual punishments.

**B    The Blinding of Stacey M. Richards**

19. Plaintiff Richards, then known as Rashaad Williams, was 21 when convicted for his one felony and sentenced to 30-120 months in NDOC custody. He was 24 on Wednesday, April 21, 2015, about one year from his anticipated parole. That was the last day he able to see.

20. Shortly after 7:00 p.m. over 40 inmates were congregating in an open area within Unit 8. As is the case in many correctional institutions, the inmates were congregating by race. Mr. Richards was with other African American inmates when, suddenly, about four Hispanic inmates began beating a fifth Hispanic inmate. Mr. Richards and his companions moved away from the altercation and fell to the floor as COs yelled commands and CO Boardman fired a warning shot.

21. According to the NDOC reports, CO Boardman then "skip shot" one round of birdshot at two combatants who remained standing. Plaintiff perceived that two rounds were fired, however. The first seemed to hit him in the shoulder, causing him reflexively to lift and turn his face. The second round then hit him square in the face, blinding him. The inmates who were fighting were not wounded by birdshot.

22. Plaintiff is informed and believes, and thereon alleges, that CO Boardman, and whichever other COs used a shotgun during the incident, did not fire birdshot in a good faith attempt to restore order, but rather sadistically, and for the purpose of harming inmates, and particularly black inmates.

- 5 -

## C.   Damages

23.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Mr. Richards was injured in his health and person, including the permanent loss of sight. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

24.   As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Mr. Richards incurred medical expenses, and will incur future medical expenses, which have caused him to sustain damages in a sum to be determined at trial.

25.   As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Mr. Richards incurred costs of assistance and care, and will incur future costs of assistance and care, which have caused him to sustain damages in a sum to be determined at trial.

26.   As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Mr. Richards incurred loss of income, and will incur future losses of income, which have caused him to sustain damages in a sum to be determined at trial.

27.   The aforementioned acts of Defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard for, with deliberate indifference to, and with the intent to deprive Mr. Richards of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Mr. Richards to exemplary and punitive damages in an amount to be proven at trial.

**FIRST CLAIM FOR RELIEF**

**(42 U.S.C. § 1983)**

28. Plaintiff incorporates by reference each and every allegation contain in the foregoing paragraphs.

29. Defendants Boardman and Does, while acting under color of law, deprived Mr. Richards of his civil rights by violating his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishments while serving a sentence for a crime by maliciously and sadistically shooting birdshot into the floor of a room where he was lying prone pursuant to their instructions, thus blinding him. Defendant Does failed to intervene and stop CO Boardman from firing.

30. Defendants, other than Defendant Boardman, were deliberately indifferent to, and acted in conscious and reckless disregard for, the health, safety and welfare of NDOC inmates, including those inmates incarcerated at Ely State Prison, by, among other things, arming COs with shotguns, promulgating policies, implementing practices, and tolerating customs that allow COs to "skip fire" birdshot in the vicinity of compliant inmates who are prone on the floor, as ordered by COs.

31. Plaintiff Richards was blinded as the proximate result of the actions of CO Boardman and Does, as well as the proximate result of the actions and inactions of Defendants, other than Defendant Boardman, as alleged above, entitling Plaintiff to compensatory and exemplary damages as alleged.

**SECOND CLAIM FOR RELIEF**

(Negligent Training, Supervision, and Retention)

32. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

33. Defendants, other than Defendant Boardman, had a duty to use reasonable care in the training, supervision, and retention of its employees to ensure that those employees are fit for their positions. Defendants owed a duty to its inmates and the general public to adequately train and supervise staff at correctional centers so

1  that they take reasonable precautions to safeguard the physical welfare of innocent,
2  bystander inmates by instituting safe procedures for control and handling altercations
3  that inevitably will occur in the corrections environment.

4      34.   Defendants, other than Defendant Boardman, breached their duty by
5  failing to use reasonable care and by the negligent and careless training and supervision
6  of COs at Ely State Prison, and CO Boardman and Does, such that said Defendants
7  failed totake reasonable measures to safeguard the physical welfare of inmates by
8  instituting safe procedures for control of inmates and by placing COs to use deadly
9  force where deadly force should not have been used, and by failing to use and provide
10 less than lethal force such as batons, tasers, and chemical agent.

11     35.   Upon information and belief Defendants Boardman and Does were unfit
12 and unqualified to be employed by NDOC.

### THIRD CLAIM FOR RELIEF

(NRS 200.481 - Battery)

15     36.   Plaintiff incorporates by reference all allegations contained in all
16 numbered paragraphs of this Complaint as if set forth fully here.

17     37.   Defendants CO Boardman and Does committed battery against Stacey M.
18 Richards, in violation of NRS 200.481, in shooting him in the shoulder and face with
19 birdshot, blinding him for life.

20     38.   As a direct and proximate cause of Defendant's battery upon the person
21 of Plaintiff, he suffered general and special damages in an amount to be more
22 specifically proven at trial.

### FOURTH CLAIM FOR RELIEF

(Negligence)

25     39.   Plaintiff incorporates by reference all allegations contained in all
26 numbered paragraphs of this Complaint as if set forth fully here.

27     40.   Defendants CO Boardman and Does were negligent in regards to Plaintiff
28 Stacey M. Richards, in that they had a duty to use ordinary care when discharging bird

- 8 -

shot in a room with compliant inmates, and breached that duty by firing bird shot in a manner that hit Plaintiff in the shoulder and face, blinding him for life.

41. As a direct and proximate cause of Defendants' negligent discharge of bird shot, Plaintiff suffered general and special damages in an amount to be more specifically proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For general damages in an amount to be determined at time of trial;
2. For special damages according to proof at time of trial;
4. For punitive damages according to proof at time of trial;
5. For reasonable attorney's fees;
6. For costs of suit;
7. For such other and further relief as the Court may deem proper.

Dated: July 27th, 2016

CHESNOFF & SCHONFELD
THE LAW OFFICES OF JOHN BURTON

By: _____
Richard A. Schonfeld.
Nevada Bar No. 6815
520 South Fourth Street, 2nd Floor
Las Vegas, NV 89101 (702) 384-5563
Attorneys For Plaintiff