UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STACEY M. RICHARDS, | Case No. 2:16-CV-1794 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| GREG COX, et al., | |
| Defendant(s). | |

Presently before the court is defendants Eric Boardman, Renee Baker, Michael Byrne, Greg Cox, Michael Fletcher, and William Gittere's (collectively, "defendants") motion for summary judgment. (ECF No. 60). Plaintiff Stacey Richards ("Richards") filed a response (ECF No. 67), to which defendants replied (ECF No. 71).

**I.     Facts**

This § 1983 civil rights case arises out of a shooting incident that took place at Ely State Prison ("ESP") in Ely, Nevada, to which plaintiff was an innocent bystander. (ECF No. 67).

On April 21, 2015, at about 7:15 p.m., plaintiff and approximately 25 inmates were congregating on the lower tier of their unit during free time. (ECF No. 67 at 7). While the inmates were congregating, prison correctional officers ("COs") and staff were in the control room, known as "the bubble." *Id.*

Without warning, four inmates began attacking a fifth inmate, punching and kicking him. *Id.* Plaintiff was not involved in this altercation but was instead standing and talking to some other inmates at a table nearby. *Id.* Relative to the bubble, plaintiff was adjacent to and behind the spot where the fight broke out. *Id.*

Defendant Eric Boardman ("CO Boardman") noticed the fight from the bubble and yelled out to the inmates, "stop fighting, get on the ground." *Id.* Inmates not involved in the fight began to get on the floor, but the five inmates involved in the altercation continued fighting. *Id.*

The parties dispute what happened next. Defendants submit that, after CO Boardman yelled for the inmates to get on the ground, he fired a blank shotgun cartridge in compliance with Nevada Department of Corrections ("NDOC") policy. (ECF No. 60 at 3). When the inmates continued fighting, CO Boardman alleges he again verbally ordered all inmates to get on the ground, to no avail. *Id.*

Finally, CO Boardman alleges that he "then discharged the weapon with a live round of 7.5 birdshot." *Id.* CO Boardman asserts that he fired the live round at the ground in the vicinity of the fighting inmates, which is known as a "skip shot." *Id.* According to CO Boardman, the skip shot "was used in order to reduce the danger of engaging in this type of fight or disturbance control, as it ensured that the pellets would remain below the belt line." *Id.* However, multiple pellets from the second shot struck plaintiff in the face, permanently blinding him in his left eye, and causing him to lose nearly all vision in his right eye. (ECF No. 67 at 10).

Plaintiff disputes that CO Boardman ever fired a blank shotgun cartridge prior to shooting a live round. *Id.* at 7. *See* (ECF No. 68 at 2–3). Rather, plaintiff asserts that when he heard the first gunshot, he simultaneously "felt his right shoulder hit with several pellets." (ECF No. 67 at 7. According to plaintiff, the impact from the first round caused him to raise his head "instinctively," which left his face exposed to the pellets from the second shot, resulting in the injuries to his eyes.[1] *Id.* at 7–8.

The parties agree that, during the incident, CO Boardman was acting pursuant to NDOC and ESP policies and training. *See* (ECF No. 60 at 10); (ECF No. 67 at 2). Specifically, CO Boardman acted pursuant to NDOC's administrative regulation ("AR") 405, which specifies the

---

[1] NDOC investigators did not recover the shotgun shells following the incident, which would have revealed whether CO Boardman shot two live rounds, or one blank round followed by a single live round. (ECF No. 67). *See also* (ECF No. 71 at 8). It is not the court's function to weigh the evidence and make credibility determinations at summary judgment; therefore, the court will construe the facts in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 255.

protocol for the use of force, including deadly force. *See* (ECF No. 60-1) (AR 405). AR 405 provides that force must be limited to the minimum degree necessary to resolve a situation and that, when possible, verbal commands will be used prior to any use of force. *Id.* at 3.

AR 405 specifically authorizes the use of skip shots, which are enumerated among the list of "non-deadly force" tactics to be used "as the situation dictates." *Id.* at 3–4. According to the regulation, skip shots are designed to strike offenders "in their lower extremities to temporarily incapacitate or immobilize" them. *Id.* at 4. Defendant NDOC Director Greg Cox ("Director Cox") signed AR 405, which was thereafter adopted by the board of prisons. (ECF No. 71 at 10).

Additionally, CO Boardman acted pursuant to ESP's operational procedure ("OP") 405, which substantially mirrors AR 405. (ECF No. 67 at 4); (ECF No. 62-1). OP 405 also classifies skip shots as "non-deadly" uses of force. (ECF No. 62-1 at 7). It requires that "blank round warning shots" be fired "upward and away from any persons," before "live rounds may be fired into the ground near the problem inmates or disturbance." *Id.* Defendant ESP Warden Renee Baker ("Warden Baker") enacted OP 405. (ECF No. 67 at 4). *See* (ECF No. 1).

Plaintiff initiated this action on July 28, 2016, asserting four causes of action: (1) 42 U.S.C. § 1983 claim for excessive force under the Eighth and Fourteenth Amendments; (2) negligent training, supervision, and retention; (3) battery; and (4) negligence. (ECF No. 1). Plaintiff sues all defendants in their individual capacities. *Id.* He asserts claims against CO Boardman, Director Cox, and Warden Baker for their direct participation in promulgating—and acting pursuant to—the policies that led to plaintiff's injuries. *Id.* He asserts his claims against the remaining defendants, ESP Associate Wardens Byrne, Fletcher, and Gittere, for their roles in staffing and training the COs at ESP. *Id.*

The court now considers defendants' motion for summary judgment on all claims. (ECF No. 60).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

James C. Mahan
U.S. District Judge

- 3 -

any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

- 4 -

differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As a preliminary matter, plaintiff consents to dismissal of his second, third, and fourth claims for relief because "the Eleventh Amendment precluded [p]laintiff from suing the State of Nevada"—a prerequisite for supplemental state law claims. (ECF No. 67 at 3, n. 3). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's second, third, and fourth claims for relief.

Next, as to plaintiff's sole remaining claim under 42 U.S.C. § 1983, defendants argue that CO Boardman is entitled to qualified immunity. (ECF No. 60). Defendants further argue that the remaining defendants are entitled to summary judgment because plaintiff cannot establish either personal participation or supervisory liability against them. *Id.*

*a. Qualified immunity*

42 U.S.C. § 1983 allows suits against government officials in their individual capacities who, under color of law, violate individuals' constitutional rights. However, some government officials are protected from such suits based on a defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects law enforcement officers,

including prison officials and guards, from civil damage suits resulting from discretionary acts unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

While courts ordinarily look to prior law to determine whether a right was clearly established at the time of the misconduct, that does not mean that the "very action in question [must have] previously been held unlawful." *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) ("[T]he law simply does not require that we find a prior case with the exact factual situation in order to hold that the official breached a clearly established duty."). Rather, qualified immunity is inappropriate where the preexisting law was sufficient to provide the defendant with "fair warning" that his conduct was unlawful. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

A prison official violates the Eighth Amendment when he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotations omitted). "This standard requires that the official be subjectively aware of the risk; it is not enough that the official objectively should have recognized the danger but failed to do so." *Id.* (citation omitted). Further, it is well-established that when an inmate alleges an Eighth Amendment violation for excessive force, the core inquiry is whether the force was applied in a good faith effort to maintain or restore discipline or was done maliciously and sadistically. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Defendants argue that, if CO Boardman acted in compliance with AR 405 and OP 405, he would have had no reason to believe that his actions constituted a violation of plaintiff's "clearly established" constitutional rights. (ECF No. 60 at 10). Accordingly, defendants argue, CO Boardman is entitled to qualified immunity. *Id.* However, the only evidence regarding whether CO Boardman fired a blank round prior to firing a live skip shot is conflicting deposition testimony, incident reports, and declarations by the parties. Because the court is not permitted to weigh the credibility of this evidence, the court finds that a genuine dispute of material fact exists for trial.

**James C. Mahan**
**U.S. District Judge**

Indeed, if the jury were to find that CO Boardman disregarded ESP and NDOC policy by failing to fire a blank round prior to his firing a live skip shot, it could then reasonably conclude that CO Boardman committed an Eighth Amendment violation by showing deliberate indifference to the health and safety of the inmates who were laying on the ground in compliance with his verbal commands. The Ninth Circuit has held that, where such a question of fact exists for the jury, the "officials' actions are not protected by qualified immunity." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002).

Accordingly, the court declines to grant qualified immunity as to CO Boardman and plaintiff's first claim for relief shall proceed against him.

*b. The remaining defendants*

Director Cox, Warden Baker, and ESP Associate Wardens Byrne, Fletcher, and Gittere argue that they are entitled to summary judgment because plaintiff has failed to establish either personal participation in the offense or supervisory liability against them. (ECF No. 60 at 11).

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Id.* (citation omitted).

Plaintiff does not dispute that Associate Wardens Byrne, Fletcher, and Gittere did not personally participate in the incident that led to plaintiff's injuries, nor does he dispute that they did not have any role in promulgating AR 405 or OP 405. *See* (ECF No. 67). Accordingly, the court finds that there can be no § 1983 liability for plaintiff's excessive force claim as to these defendants. Defendants' motion for summary judgment is thus granted as to defendants Byrne, Fletcher, and Gittere.

However, plaintiff argues that Director Cox and Warden Baker "deliberately adopted the [skip shot] policies, AR and OP 405, and maintained them without regards to the obvious risk posed to bystander inmates, and with actual knowledge of the infliction of birdshot injuries on bystanders, including staff." (ECF No. 67 at 12). Where claims against prison officials arise

from the implementation of prison policies that lead to the deprivation of constitutional rights, district courts are required to find "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation" before denying prison officials qualified immunity. *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal quotations omitted)).

Defendants do not dispute that Director Cox and Warden Baker personally participated in the promulgation of AR 405 and OP 405 and knew of prior incidents where innocent bystanders were injured as a result of those policies. *See* (ECF No. 71). Moreover, this court and other courts in this district have previously held that the skip shot policies at issue in this case are indeed "so deficient that they, themselves constitute 'the moving force' behind the constitutional violation. *Olivas v. Nevada*, No. 2:14-cv-01801-JCM-VCF, 2018 U.S. Dist. LEXIS 201059 at *14 (D. Nev. Nov. 27, 2018). *See also Perez v. Nevada*, No. 2:15-cv-01572-APG-CWH, 2017 U.S. Dist. LEXIS 152897 (D. Nev. Sept. 20, 2017).

The court finds that this district's previous holdings are equally applicable to the facts of the instant case. Accordingly, the court finds that Director Cox and Warden Baker are not entitled to summary judgment on plaintiff's § 1983 claim against them.

**IV. Conclusion**

In light of the foregoing, plaintiff's second, third, and fourth causes of action are dismissed. Additionally, plaintiff's sole remaining § 1983 claim is dismissed as to defendants Byrne, Fletcher, and Gittere. Plaintiff's § 1983 claim shall proceed against CO Boardman, Director Cox, and Warden Baker.

. . .

. . .

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 60) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS SO ORDERED.

DATED May 23, 2019.

_____
UNITED STATES DISTRICT JUDGE