UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Stacey M. Richards,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Greg Cox, *et al.*,<br><br>　　　　　　Defendants. | Case No. 2:16-cv-01794-JCM-BNW<br><br>**ORDER re ECF Nos. 124 and 125** |

　　　This case stems from an April 21, 2015 incident at Ely State Prison. On that day, a fight broke out between four incarcerated people. Plaintiff Stacey Richards, who was then incarcerated at Ely and not involved in the fight, dove to the floor as required by the prison's get-down order and was subsequently struck by the birdshot fired by a correctional officer. As a result, he lost all sight in his left eye, and the retina in his right eye was detached. His complaint alleges violations of 42 U.S.C. § 1983, negligent training and supervision, battery, and negligence.

　　　There are two matters before the Court. First is Plaintiff's motion to reopen discovery. ECF No. 124. Defendants Rene Baker, Eric Boardman, and James Cox opposed at ECF No. 126, and Plaintiff replied at ECF No. 129. Next is Defendants' motion for sanctions. ECF No. 125. Plaintiff's opposition is at ECF No.127, and Defendants' reply is at ECF No. 128. The Court held a hearing on both motions on July 28, 2022. ECF No. 122.[1]

　　　The Court will analyze these motions in inverse order.

//

//

//

//

---

[1] The parties initially briefed these motions at ECF No. 108 (Plaintiff's motion to reopen discovery) and ECF No. 112 (Defendants' motion for sanctions). The Court asked that the parties re-brief the issues for better clarity and organization. As a result, Plaintiff refiled his motion to reopen discovery at ECF No. 124, filing it as a supplement, and Defendants refiled their motion for sanctions at ECF No. 125. The Court considered the original and revised versions for purposes of this Order.

**I.    Defendants' Motion for Sanctions (ECF No. 125)**

    **A.    Parties' Arguments[2]**

        **i.    Defendants' Argument**

Defendants seek to preclude Plaintiff from proceeding on any economic theory of recovery as the disclosures do not comply with Fed. R. Civ. P. 26(a)(1)(A). These include past medical expenses, future medical expenses, lost income, lost earnings, and special damages.[3] Defendants argue that Plaintiff failed to provide any calculation of economic damages, list any witnesses with knowledge regarding these damages, or provide any evidentiary support for them.

Defendants also seek to preclude Plaintiff from proceeding on a "loss of enjoyment of life/future damages" theory of recovery.[4] They argue that this category of damages does not appear on the initial (or any of the supplemental) disclosures. They also contend that equally absent are the witnesses who would provide testimony to support this theory. According to Defendants, although Plaintiff did list pain and suffering as a category of damages (to which Defendants do not object), pain and suffering is different from "loss of enjoyment of life/future damages" in the context of a § 1983 case.

Defendants argue there is no substantial justification for Plaintiff's conduct and that the failure to comply with disclosure obligations is not harmless. Thus, Defendants' position is that the Court should exclude all theories of recovery other than pain and suffering. But they do not explain why the other categories of damages listed by Plaintiff (permanent loss of vision[5], emotional distress, and mental suffering) should be excluded.

Defendants also argue that Plaintiff should not be allowed to present any evidence disclosed after the discovery cutoff date, as these supplemental disclosures were not timely.

Lastly, they argue that the Court should not modify the Joint Pretrial Order under Fed. R. Civ. P. 16(e) to permit Plaintiff to proceed on the "loss of enjoyment of life/future damages"

---

[2] The Court will only list the arguments it finds necessary to resolve the issues in question.
[3] The Court will refer to these damages as economic damages.
[4] The Court will refer to these damages as non-economic damages.
[5] The Court expresses no view as to whether "permanent loss of vision" is a proper theory of recovery.

theory of recovery, offer testimony from Drs. Gregory or White, or introduce any evidence disclosed in Plaintiff's fifth supplemental disclosure (in June 2022).

### ii. Plaintiff's Response

Plaintiff argues that past medical expenses, future medical expenses, lost income, lost earnings, and special damages "are not significant." In addition, Plaintiff mentions that he has withdrawn the loss-of-income claim. He does not address the failure to provide a calculation of damages or witnesses who would have knowledge regarding economic damages. But he asserts that he provided a timely supplemental disclosure in May 2017 of a $1,000 bill for treatment from Kaiser Permanente.

Plaintiff also takes issue with not being able to proceed on the non-economic "loss of enjoyment of life/future damages" theory of recovery. He points to his initial disclosures which list "permanent loss of vision, pain and suffering, emotional distress and mental suffering." Plaintiff disagrees with Defendants' argument that "loss of enjoyment of life/future damages" is a different theory of recovery than pain and suffering. Additionally, he relies on case law for the proposition that a computation of damages is not necessary for these kinds of non-economic damages. Lastly, he contends that he listed himself and his father as witnesses for these damages and that any defect in disclosure is harmless.

As to his ability to rely on disclosures that took place after the close of discovery, he asserts that these were all timely because the need for the procedures did not arise until after the close of discovery. These include records from California Eye Specialists (Dr. Amini and Dr. Ong), records from a Kaiser Permanente surgery performed by Dr. Gregory in May 2022, a dental X-ray, and a CT scan image.

Plaintiff does not address Defendants' argument under Fed. R. Civ. P. 16(e).

### iii. Defendants' Reply

As to economic damages, Defendants argue that Plaintiff has not made any arguments to rebut the need for exclusion. As a result, they argue that these should be excluded pursuant to Local Rule 7-2.

Defendants continue to argue that "loss of enjoyment of life/future damages" are a distinct category of damages from that of pain and suffering, and that these damages were never disclosed. They cite to a Nevada Supreme Court case and a Ninth Circuit jury instruction for that proposition. Moreover, Defendants point out that while Plaintiff disclosed that he and his father would testify "on the nature and extent of [Plaintiff's] damages[,]" this is not sufficient for purposes of Fed. R. Civ. P. 26(a)(1)(A)(i). Defendants explain this description falls short of disclosing that either of them would testify as to Plaintiff's talents, recreational interests, hobbies, and avocations. Lastly, they argue that the documentary evidence to support any such life pursuits is equally missing.

Turning to the evidence produced after the close of discovery, Defendants argue Plaintiff has always known he might require future medical treatment. Yet he failed to disclose any of his non-retained experts (Drs. Amini, Ong, and Gregory) within the expert-disclosure deadlines. In addition, they point out that the determination as to whether supplementation has been timely is based on when the information was available to the disclosing party. In turn, they explain that the fact that many of these procedures took place after the close of discovery does not explain why months went by between a particular procedure and its disclosure. The same applies to the disclosure of the non-retained experts. And with regard to Dr. Gregory, they argue that the disclosure does not comply with the Rules because it does not include a summary of the opinions or facts on which he will testify. They further argue that Plaintiff appears to want to use Dr. Gregory to testify as to how the injury itself contributed to his current condition—which is a matter for a retained expert.

Defendants also point out that Plaintiff never addressed their argument regarding changes to the Joint Pretrial Order.

**B.     Analysis**

Fed. R. Civ. P. 26(a)(1)(A) requires parties to provide initial disclosures to the opposing parties without awaiting a discovery request. The initial disclosures must include a computation of each category of damages claimed by the disclosing party. Fed. R. Civ. P. 26(a)(1)(A)(iii). Additionally, the "category of damages" disclosure requires more than a list of the broad types of

damages. *See CCR/AG Showcase Phase I Owner, L.L.C. v. United Artists Theatre Circuit, Inc.*, 2010 WL 1947016 (D. Nev. 2010). The damages computation enables defendants to understand the contours of their liability exposure and, by extension, to make informed decisions regarding settlement. *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009). "While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011). In addition to disclosing its damages computation, Rule 26 requires the disclosing party to "make available the supporting documents" for its damages computation. *See* Advisory Committee Notes to 1993 Amendments. The disclosing party also has a duty to supplement incomplete or inaccurate disclosures "in a timely manner." Fed. R. Civ. P. 26(e).

There is no bright line rule that supplementation of disclosures is improper if made after the close of discovery. *American Gen. Life Ins. Co. v. Vistana Condo. Owners Assoc.*, 2016 WL 1611585, at *2 (D. Nev. Apr. 21, 2016). Instead, the key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the disclosing party. *Id*. Although the disclosing party has a duty to obtain sufficient information within a reasonable timeframe as to what damages he will claim, Rule 26 provides for needed flexibility in supplementing the initial disclosure damages computation as the case progresses and circumstances evolve. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017). But Rule 26(e) does not create a "loophole" for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed. *Luke v. Family Care and Urgent Medical Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Supplementation means "correcting inaccuracies . . . based on information that was not available at the time of the initial disclosure." *Id*.

When a disclosing party fails to disclose or supplement its Rule 26 disclosures, courts turn to Fed. R. Civ. P. 37 to determine if sanctions are appropriate. Rule 37 provides in pertinent part:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

Rule 37(c)(1) "gives teeth" to the requirements of Rule 26. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Generally, an exclusion sanction is "self-executing" and "automatic." *See* Advisory Committee Notes to 1993 Amendments. Nonetheless, courts are entrusted with "particularly wide latitude" in exercising this discretion to impose sanctions under Rule 37(c)(1). *Yeti by Molly*, 259 F.3d at 1106.

In exercising that discretion, courts determine initially whether the failure to comply with the disclosure requirements was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The party facing sanctions bears the burden of establishing that substantial justification or harmlessness exists. *Yeti by Molly*, 259 F.3d at 1107. "Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless." *Jackson*, 278 F.R.D. at 594.

The Ninth Circuit has identified various factors to determine whether to impose exclusion sanctions, including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other parties; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). Additionally, when an exclusion sanction under Rule 37(c)(1) is tantamount to dismissal of a claim, courts must also consider whether the disclosing party's non-compliance involved willfulness, fault, or bad faith. *R & R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012)

### i. Economic Damages[6]

Here, Plaintiff ignored his obligation under Rule 26(a)(1)(A)(iii) as to each category of economic damages. While, understandably, he may not have had an exact amount to disclose

---

[6] The Court does not believe that granting this portion of the motion as unopposed under LR 7-2 would be proper given the *Wendt* factors it must ultimately consider in determining whether to exclude these damages.

when initial disclosures were due, the problem here is that Plaintiff never provided any supplement that would satisfy the rule.

While Plaintiff did disclose a $1,000 Kaiser Permanente bill from treatment in 2016, this is not enough to comply with the rule. "The Defendants are not required to compute damages, Rule 26 requires plaintiffs to do so." *Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011); *see also Allstate Ins. Co. v. Nassiri*, 2011 WL 2977127, at *4 (D. Nev. July 21, 2011) ("The plaintiff cannot shift to defendant the burden of attempting to determine the amount of the claimed damages from documents that are produced without any explanation of plaintiff's claimed damages."). Therefore, simply disclosing the $1,000 Kaiser Permanente bill—without more—does not satisfy Plaintiff's Rule 26(a)(1)(A)(iii) obligation.

It is not clear whether Plaintiff is arguing that he should be able to rely on the documentation disclosed after the close of discovery to recover economic damages. That is, on the one hand, he argues economic damages are not significant; on the other hand, he explains the tardiness of certain disclosures is due to treatment taking place after the close of discovery. In any event (and irrespective of whether these disclosures comported with Rule 26(e)), Plaintiff never provided a computation of these damages or explained how each bill/document corresponds to them.

Having determined Plaintiff violated Rule 26(a)(1)(A)(iii), the Court next determines whether his failure to disclose was substantially justified or harmless. Here, Plaintiff does not address either exception. While he does state that "there is no basis to exclude this evidence," he fails to support that claim. Thus, he has not met his burden.

While the exclusion of economic damages is not mandatory, it is a reasonable consequence in this case. The complaint was filed in 2016; there is an interest in obtaining some resolution in this case. There has been plenty of opportunity for Plaintiff to supplement his disclosure obligations to both compute economic damages and to explain which medical bills/documents fell within each category. It is the Court's understanding that he has never done this. Moreover, he describes these damages as insignificant.

The preclusion of this evidence also will not limit the jury's ability to make findings based on the merits of this case. And while lesser sanctions may be available, they would not be proper given Plaintiff's complete failure to comply with Rule 26(a)(1)(A)(iii). As a result, the Court, in its discretion, will not allow Plaintiff to rely on any economic theory of recovery. Fed. R. Civ. P. 37(c)(1).

### ii. Non-Economic Damages

Plaintiff disclosed the following non-economic damages in his initial disclosures: Permanent loss of vision, pain and suffering, emotional distress, and mental suffering.

Defendants do not object to Plaintiff relying on a pain-and-suffering theory of recovery. They seem to tacitly accept these types of damages do not lend themselves to a computation under Rule 26(a)(1)(A)(iii) because of their subjectivity. Given this, it is not clear why the same rationale would not apply to the other non-economic theories Plaintiff lists (i.e., permanent loss of vision, emotional distress, and mental suffering).[7]

Thus, the Court does not see any Rule 26(a)(1)(A)(iii) deficiencies regarding these non-economic damages.

Turning to the "loss of enjoyment of life/future damages," this category could very well blend into a pain-and- suffering theory of recovery (and even some of the others listed in Plaintiff's initial disclosures). But, to the extent it differs and encompasses other areas of inquiry for which the defense was not on notice, Plaintiff would be in violation of Rule 26(a)(1)(A)(iii). Initial disclosure requirements eliminate surprise and trial by ambush. *See, e.g., Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862–63 (9th Cir. 2014). The damages computation, in particular, further enables the defendants to understand the contours of their liability exposure and, by extension, to make informed decisions regarding settlement. *Frontline Med. Assocs., Inc.,* 263 F.R.D. at 569.

---

[7] As mentioned above, the Court expresses no opinion as to whether "permanent loss of vision" is a theory of recovery. But assuming it were, a computation of damages would not be needed under Rule 26(a)(1)(A)(iii).

Assuming there is a difference, Plaintiff would need to demonstrate that the failure to disclose was substantially justified or harmless. He has not addressed this. Thus, he has not met his burden.

The same rationale applied to the preclusion of economic damages therefore applies here. The Court, in its discretion, would disallow Plaintiff from presenting on a "loss of enjoyment of life/future damages" if it covers topics that do not come within those listed in his initial disclosures dealing with non-economic damages.[8] Should the parties need a determination regarding this subject, additional briefing would be needed as the Court does not have sufficient information to understand what evidence Plaintiff intends to introduce as part of his "loss of enjoyment of life/future damages" theory of recovery and whether or how it differs from other disclosed theories. If the parties choose to brief this issue, briefs will be due 10 days from the date of this Order, must be submitted simultaneously (with no option for responses), and cannot exceed 10 pages.

### iii. Supplemental Disclosures after the Close of Discovery

As stated above, to determine whether a supplemental disclosure is timely, courts focus on the lapse of time between when the information was available to the disclosing party and when it was actually disclosed. *American Gen. Life Ins. Co.*, 2016 WL 1611585, at *2. It does not matter that the need for specific care did not arise until after discovery closed; what matters is how long Plaintiff waited between the time care was provided and the time he disclosed this information to Defendants.

Below is a list of the disclosures following the close of discovery (on September 10, 2018), including the dates treatment was received and the dates they were disclosed:

- August 16, 2021's second supplemental disclosure included treatment from California Eye

---

[8] Given this, there is no need to discuss whether Plaintiff's disclosure of witnesses for this category of damages was sufficient or not. Should this theory of recovery ultimately be similar to those listed, Plaintiff's disclosure that he and his father would testify regarding "the nature and extent of [Plaintiff's] damages" (and providing means to contact them) complies with Rule 26(a)(1)(A)(i). *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1189 (9th Cir. 2022) (holding that disclosure that certain witnesses would testify "[r]egarding the claims of the underlying case and the damages at issue" and provided their contact information complied with Rule 26(a)(1)(A)(i)).

Specialists from January 2021 to June 2021. ECF No. 125-1, Exhibit E. This included examinations, surgeries, and treatment by Drs. Amini and Ong. *Id*. The treatments Plaintiff received closer to August 16, 2021 would be timely, while earlier ones would not.

- March 18, 2022's third supplemental disclosure included dental X-rays taken on December 30, 2021. ECF No. 125-1, Exhibit H. Without any specific information as to why there was a three-month delay, the Court cannot find this was a timely supplement.

- April 16, 2022's supplemental expert disclosure included Drs. Amini and Ong. ECF No. 125-1, Exhibit F. Given Plaintiff's last treatment with these doctors was in June 2021, there is no explanation as to why these doctors were not disclosed as non-retained experts until nine months later. This was not a timely supplement.

- April 16, 2022's fourth supplemental disclosure of Drs. Amini and Ong as witnesses. The same rationale employed above applies here.[9] ECF No. 125-1, Exhibit G.

- June 9, 2022's fifth supplemental disclosure includes records from Kaiser Permanente (treatment September 1, 2021 through May 9, 2022), a 2015 CT scan image, and a designation that Drs. Gregory and White would testify as witnesses. ECF No. 125-1, Exhibit I. Similar to the California Eye Specialists records, treatments Plaintiff received closer to June 9, 2022 would be timely, while earlier ones would not. As to the CT scan, both parties designated "records" from the William Bee Ririe hospital. That includes the CT scan in question. Lastly, the designation of Drs. Gregory and White as witnesses was not timely. The last surgical procedure took place in May 2022—but there had been discussions for the need for treatment with this doctor going back to September of 2021. Thus, the same rationale applied to the California Eye Specialist records applies here.

- June 14, 2022's second supplemental expert disclosure designates Dr. Gregory as a non-retained expert. ECF No. 125-1, Exhibit J. This disclosure was not timely given Plaintiff knew (at the very least as of April 16, 2022) that Dr. Gregory would need to testify as an expert.

Overwhelmingly, the disclosures would not qualify as timely.

---

[9] As discussed below, this Order moots this issue because Plaintiff will be able to depose Dr. Gregory.

Before turning to the next step of the analysis, the Court notes that it does not find that Plaintiff's late supplemental disclosures were used as a "loophole" to revise his initial disclosures to his advantage. There is no doubt Plaintiff has needed additional treatment since the incident took place (and that the case was at a stand-still for almost three years). Plaintiff originally designated Drs. Kuppermann and Lee as non-retained experts (and did so timely). He also took the deposition of Dr. Lee to present what would have been *then* an up-to-date picture of his injuries. As the need for treatment developed, he supplemented (albeit in a non-timely manner) the need for other non-retained experts to discuss the new procedures that had taken place and the accompanying records.

The Court now turns to whether the failure to disclose was substantially justified or harmless. While Plaintiff does not clearly present this argument, it appears he believes that because the need for treatment did not arise until after the close of discovery, there is substantial justification for the late disclosure. But this does not address the lapse in time between treatment and disclosure. Plaintiff also does not address the issue of harmlessness.

But as discussed above, the Court need not exclude this evidence or witnesses even if the failure to comply with Rule 26(e) was not substantially justified or harmless. As a result, it turns to the *Wendt* factors to determine whether exclusion would be proper.

As stated above, this case has been pending since 2016—the need for an expeditious determination of this action is clear. The same applies to the Court's need to manage its docket by bringing this case to an end to devote resources to the thousands of cases that have been filed since 2016. In this vein, the Court notes the trial date is set for September 26. On the other hand, it takes note that there were approximately three years during which this case was dormant due to appellate litigation.[10] Thus, while many of the supplemental disclosures were not timely, the reality is that the case was tied up in appellate practice or dispositive motion litigation such that the timing of the disclosures had little consequence. Nevertheless, it would certainly prejudice

---

[10] From October 2018 to November 2021, this case was tied up in appellate litigation and additional proceedings due to remand instructions.

11

1  Defendants not to be able to conduct discovery based on some of Plaintiff's supplemental
2  disclosures. As will be explained below, the Court will allow Defendants to do so.
3        At bottom, the Court finds that the public policy favoring disposition of cases on their
4  merits is paramount in a case like this one. The Court has already excluded Plaintiff's ability to
5  present on its economic theory of recovery. Not allowing him to introduce the evidence above
6  would practically gut his ability to recover on non-economic damages. This would be tantamount
7  to the dismissal of the claim, and the Court does not find that the behavior at issue (in the context
8  of the factual and procedural posture of this case) merits that severe consequence.
9        Having said that, the Court finds that lesser sanctions would be proper in this case. As a
10  result, it will order Plaintiff to reimburse Defendants for the attorney's fees for drafting this
11  motion and reply.[11]
12        As alluded to above, it would be unfair to allow Plaintiff to rely on his supplemental
13  disclosures (most of which were untimely) and deny Defendants the opportunity to conduct
14  discovery on these matters. The Court notes that given its order denying Plaintiff from presenting
15  evidence on economic damages, Defendants need not conduct additional discovery issues
16  relevant to economic damages. Nevertheless, to the extent that the evidence discussed above after
17  relates to Plaintiff's non-economic theory of recovery, the Court will *sua sponte* reopen discovery
18  for Defendants to further conduct discovery. *See, e.g., Price v. Wiese*, 2019 WL 6918201, at *1
19  (S.D. Cal. Dec. 19, 2019) ("[T]he Court *sua sponte* reopened discovery . . . for the limited
20  purpose of permitting the parties to take one another's depositions and extended the pretrial
21  motions deadline accordingly.").
22        Lastly, Defendants have raised an objection to the report provided for Dr. Gregory and the
23  scope of his potential testimony. The Court does not have sufficient information to decide this
24  issue. While the current posture of the case would allow Plaintiff to cure whatever deficiencies
25  there may be in the report, re-classifying Dr. Gregory as a retained expert (literally or
26  figuratively) is a completely different matter. Should the parties choose to brief this issue, briefs

---

[11] Plaintiffs are not to pay for Defendants' original briefs filed at ECF Nos. 112 and 121. Moreover, the parties must meet and confer within seven days of this Order regarding attorney's fees. If the parties are unable to reach an agreement, Defendants are free to file an appropriate motion.

will be due 10 days from the date of this Order, must be submitted simultaneously (with no option for responses), and cannot exceed 10 pages.

### iv. Joint Pretrial Order

Given the Order above and the Court's Order on Plaintiff's motion to reopen discovery, this issue may be moot. In addition, there may be a need for both parties to amend the Joint Pretrial Order as well. To the extent it is not moot, whether to amend the Joint Pretrial Order will be up to the District Judge.

## II. Plaintiff's Motion to Reopen Discovery (ECF No. 124)

### A. Parties' Arguments

Both parties' arguments track many of those discussed above. The only difference, and what remains to be decided, is whether Plaintiff will be permitted to reopen discovery for the purpose of deposing Dr. Gregory. His original motion cites only to Fed. R. Civ. P. 6, and his renewed motion also fails to state the correct standard. Defendants focus on this deficiency in their opposition and provide other reasons not to reopen discovery.

### B. Analysis

Fed. R. Civ. P. 16(b)(4) states that a scheduling order may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 6(b) and LR 6-1 state that a request for extension made after the expiration of the specified period shall not be granted unless excusable neglect is shown. A request to reopen discovery falls within the ambit of the good cause requirements of Rule 16(b)(4) and LR 6-1(b). *Abila v. United States*, 2013 WL 486973, *4 (D. Nev. 2013).

The meaning of "good cause" under Rule 16(b) was further defined by the Ninth Circuit in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) as follows:

> Fed. R. Civ. P. 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment); . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief . . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.

(internal citations omitted).

Where the movant "fail[s] to show diligence, 'the inquiry should end.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (quoting *Johnson*, 975 F.2d at 609).

A party seeking to reopen discovery after the deadline has run must show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); LR 6-1(b). Relevant circumstances to consider include: (1) the danger of prejudice to other parties; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the moving party; and (4) whether the moving party acted in good faith. *Id*.

It is true that Plaintiff does not mention "good cause" in his renewed motion and that his original motion does not address it in the context of the applicable standard. Yet he has addressed what the Court must consider: Whether he has been diligent. ECF No. 108 at 3–4, ECF No. 124 at 3, 5. Specifically, he has explained over and over that he could not have been any more diligent given the date Dr. Gregory performed the surgery—May 9, 2022. *See* ECF No. 124 at 5. Importantly, Defendants were aware of Plaintiff's need to reopen discovery to depose Dr. Gregory as early as April 16, 2022. Informal discussions took place until June 10, 2022, at which point Defendants indicated that they would not stipulate to Plaintiff deposing Dr. Gregory. And within five days, Plaintiff filed the original version of this motion to reopen discovery (at ECF No. 108).

Moreover, Plaintiff has established excusable neglect.

First, Defendants will not be prejudiced by Plaintiff's ability to depose Dr. Gregory, as they have been on notice since mid-April regarding his role in this case and have subsequently received Dr. Gregory's medical records. Moreover, the Court is *sua sponte* reopening discovery for Defendants to conduct (if they so choose) additional discovery regarding Plaintiff's supplemental disclosures. This means that Plaintiff's ability to depose Dr. Gregory will fall within this same (30-day) reopened discovery period.

Second, the trial date will have to be continued regardless of the Court's decision on Plaintiff's motion to reopen discovery given the likelihood of Defendants conducting some follow-up discovery on Plaintiff's supplemental disclosures.

1 | Third, Plaintiff has shown good reasons for the delay in bringing this motion to reopen discovery: (1) Dr. Gregory's surgery took place on May 9, 2022, after the close of discovery and the Joint Pretrial Order deadline, and (2) Plaintiff relied on informal discussions with Defendants in an attempt to secure a stipulation to reopen discovery for this limited purpose.

Finally, Plaintiff has acted in good faith. As noted above, it sought to resolve the issue of deposing Dr. Gregory through informal conferences with Defendants and, within a few days of Defendants expressly stating that they would not stipulate to reopening discovery, Plaintiff sought the Court's intervention.

Having established both good cause and excusable neglect, the Court will therefore grant Plaintiff's motion to reopen discovery for the limited purpose of deposing Dr. Gregory.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

### III. Conclusion and Order

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reopen Discovery (ECF No. 124) is GRANTED. Plaintiff shall have 30 days from the date of this Order to depose Dr. Anthony Gregory, M.D.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions (ECF No. 125) is GRANTED IN PART and DENIED IN PART consistent with this Order. Defendants shall have 30 days from the date of this Order to conduct discovery that relates to the supplements received from Plaintiff after the close of discovery.

**IT IS FURTHER ORDERED** that the parties must file a new Joint Pretrial Order within 45 days of the date of this Order.

**IT IS FURTHER ORDERED** that the parties must meet and confer within seven days of this Order regarding attorney's fees. If the parties are unable to agree on an amount, Defendants are free to file an appropriate motion.

**IT IS FURTHER ORDERED** that should the parties need to brief additional issues raised in this Order, they must do so within 10 days of this Order. The briefs cannot exceed 10 pages and must be submitted simultaneously with no option for responses.

DATED: September 8, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE